UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| S.M. by her parent and next friend, L.M., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SCHOOL CITY OF HAMMOND, THE ) <br> INDIANA DEPARTMENT OF EDUCATION, ) <br> DIVISION OF SPECIAL EDUCATION, and ) <br> KATIE JENNER, INDIANA SECRETARY OF ) <br> EDUCATION, ) <br> ) <br> Defendants. ) | No. 2:24-cv-048-PPS-JEM |

## OPINION AND ORDER

This case arises from the appeal of an administrative action concerning alleged violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA") and Indiana's related special education rules. The defendants are the School City of Hammond and a group of State of Indiana related entities and individuals who for simplicity's sake I will refer to collectively as "the State." The present Motion to Dismiss is brought by the State and relates only to Count III of the Amended Complaint which concerns the qualifications of the hearing officer appointed to preside over the administrative hearing. Because Count III fails to state a claim, the Motion to Dismiss [DE 21] is GRANTED.

### Background

For purposes of this motion, I take as true all allegations of the Amended Complaint. [*See* DE 19.] S.M. is a ten-year-old child with Downs Syndrome and

1

Intellectual Disability. During the 2022-2023 school year, S.M. lived with her mother, L.M., in Hammond, Indiana and enrolled in the local public school system, which is operated by School City of Hammond. For purposes of this opinion, I will refer to S.M. and L.M. collectively as Plaintiff.

In August 2022, Plaintiff was set to attend Burns-Hicks Elementary School in Hammond. [*Id*. at ¶ 1.]¹ Plaintiff attended a back-to-school night at Burns-Hicks on August 16, 2022, and met with school staff. [*Id*.] After this event, school staff informed Plaintiff that she could not begin in-person classes at Burns-Hicks because the school could not meet Plaintiff's educational needs. [*Id*.] Instead, School City of Hammond developed an Individualized Education Program ("IEP") that placed Plaintiff on four hours per week of Homebound Services, though the IEP called for Plaintiff to receive these services in-person at Burns-Hicks after the school day had ended. [*Id*. at ¶ 2.] The IEP required School City of Hammond to provide Plaintiff with speech therapy, occupational therapy, and physical therapy. [*Id*.]

In September 2022, Plaintiff's Homebound teacher informed Plaintiff that she could no longer provide Plaintiff with Homebound Services but that another School City of Hammond teacher would contact Plaintiff to continue her services. [*Id*. at ¶ 3.] But according to Plaintiff, School City of Hammond provided no additional Homebound Services until Plaintiff, after the intervention of legal and education advocates, began to attend Burns-Hicks Elementary in-person on March 13, 2023. [*Id*. at ¶¶ 4–5.] Plaintiff moved to Hancock County, Indiana (which is about three hours from

---

¹ The paragraph citations refer to the numbered paragraphs in the "Facts Related to This Complaint" section that begins on page four of the Amended Complaint.

Hammond) after she completed the 2023 school year in Hammond. [*Id.* at ¶ 5–6.]

After Plaintiff's move, she initiated an Administrative Due Process Hearing (Hearing No. 011-2024) alleging that School City of Hammond violated the IDEA and Indiana's special education rules by failing to develop and implement an appropriate IEP to meet her educational needs. [Id. at ¶ 7.] Thereafter, the State appointed Bob Reiling as the Independent Hearing Officer ("IHO") to preside over Plaintiff's administrative proceeding. [*Id.* at ¶ 8.] In December 2023, the parties submitted their list of proposed issues to be resolved at the administrative hearing. [*Id.* at ¶¶ 9–10; DE 1-6; DE 1-7.] In the administrative process, School City of Hammond also filed a Motion for Summary Judgment in which it sought partial summary judgment. [DE 1-8.] On January 9, 2024, the IHO issued a decision granting summary judgment on the basis that Plaintiff's move to Hancock County mooted her claims. [DE 1-10; DE 19 at ¶ 13.] About a month later, Plaintiff filed her complaint challenging the administrative action in this court. [DE 1.]

At this juncture, as I discuss below, there is no need to discuss in detail the substance of Plaintiff's administrative hearing. That is the subject of Counts I and II of the Amended Complaint, which allege that the IHO's decision is contrary to law (Count I) and arbitrary and capricious (Count II). Instead, the only issue presently before me is whether Count III survives dismissal. In particular, the question is whether the IHO satisfied the qualifications of federal or Indiana law to preside over the administrative matter in the first place. Count III is essentially a broadside attack

3

on the IHO himself. [DE 19 at 11–15.]² As a remedy for the alleged violations set out in Count III, Plaintiff requests a remand along with an order directing the State to appoint a new IHO. [*Id*. at 15–16.] The State now seeks dismissal arguing that Count III fails to state a claim. [DE 21; DE 22.]

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### I.     Background of the IDEA's and Indiana's Hearing Officer Requirements

Let's start with a primer on what the IDEA requires, and how Indiana law implements those requirements, including the administrative appeal process. Briefly, the IDEA guarantees a free and appropriate public education ("FAPE") to every child with a disability who attends a public school that receives public funds, such as

---

² The pincites without a paragraph symbol refer to page numbers of the Amended Complaint.

4

Burns-Hicks Elementary. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1). To do this, the IDEA requires school districts to work with a student's guardians to create an IEP, which is an education plan individually tailored to the child's needs that contains specific, statutorily designated components. *See* 20 U.S.C. §§ 1401(14), 1414(d). Indiana's special education regulations, adopted to implement the IDEA, can be found at 511 IAC 7-32 through 7-49 ("Article 7").

To enforce these education requirements, guardians representing a child may initiate a complaint that challenges the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). Upon doing so, the involved parties are provided the opportunity for an "impartial due process hearing" conducted by either the state education agency or the local education agency (individual states choose which agency shall conduct these hearings). 20 U.S.C. § 1415(f)(1)(A); 511 IAC 7-45-3. In Indiana, these due process hearings are conducted by an Independent Hearing Officer appointed by the Indiana Secretary of Education. 511 IAC 7-45-3(d).

The IDEA provides minimum requirements for the hearing officers who conduct these due proves hearings. Hearing officers must:

> **(i)** not be--
> > **(I)** an employee of the State educational agency or the local educational agency involved in the education or care of the child; or
> > **(II)** a person having a personal or professional interest that conflicts with the person's objectivity in the hearing;
> **(ii)** possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts;
> **(iii)** possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and

>   **(iv)** possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

20 U.S.C. § 1415(f)(3)(A).

Indiana regulations map onto these federal requirements but include an additional requirement that IHOs "be trained in the due process hearing procedures to ensure the ability to conduct hearings in accordance with [Indiana's Administrative Orders and Procedures Act]." 511 IAC 7-45-8(a)(4). As Plaintiff has done here, parties may appeal decisions by hearing officers to state or federal court. 20 U.S.C. § 1415(i)(2); 511 IAC 7-45-9.

## II.     Plaintiff Has Not Alleged a Claim That the IHO Is Not Qualified

As in Count I and II of the Amended Complaint, in Count III Plaintiff alleges that the IHO made numerous procedural and substantive errors in his decision. But in Count III Plaintiff also asserts that the alleged errors demonstrate that the IHO is not qualified to be an IHO as a matter of law. To remedy this problem, instead of simply seeking a remand, as is typical in administrative appeals, Plaintiff requests that this Court order the Indiana Department of Education and its Secretary to appoint a new IHO to oversee a remanded due process hearing.

As a preliminary matter, Plaintiff cites no authority for her request to order the State to replace the IHO. As the State notes, upon a finding of error, district courts typically remand the administrative proceeding back to the hearing officer for issuance of a new opinion consistent with the district court's corrections. *See, e.g., Z.J. v. Bd. of Educ. of the City of Chicago, Dist. No. 299*, 344 F. Supp. 3d 988 (N.D. Ill. 2018); *Walker v. District of Columbia*, 786 F. Supp. 2d 232 (D.D.C. 2011). I will put this issue aside for

now because Plaintiff's requested relief is only necessary should Count III survive the State's Motion to Dismiss.

The legal authority concerning challenges to a hearing officer's knowledge of the IDEA is exceedingly thin. In fact, on this issue, Plaintiff's response cites no cases relevant to her claim concerning the IHO's qualifications. Instead, the response seeks merely to distinguish the only two unpublished cases cited by the State on this question. [DE 27 at 8–10.] For her part, Plaintiff relies entirely upon the statutory language of the IDEA and Article 7.

First, to show that the IHO must be unqualified, Plaintiff alleges that he made a substantive legal error in his application of *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588 (7th Cir. 2006) to find that her relocation to a new school district mooted her claims against School City of Hammond. [DE 19 at 11–12.] Next, Plaintiff alleges the IHO made numerous procedural errors, including that he: (1) "incorrectly calculated the Due Process Hearing decision deadline and listed the incorrect deadline in his preliminary scheduling orders"; (2) "failed to adhere to the decision deadline" called for in Indiana's special education rules; (3) "did not remember which party filed a motion and/or raised a concern and attributed it to the wrong party" on several occasions; and (4) "incorrectly granted [School City of Hammond's] Notice of Insufficiency regarding the Plaintiff's Due Process Hearing Request." *Id*. at 12–14. Plaintiff also vaguely asserts that the IHO is "apparently fairly new to the position of [IHO]" and that in a separate case not involving Plaintiff the IHO in March 2023 issued an untimely Preliminary Scheduling Order that contained incorrect information. *Id*. at

14–15.

The Plaintiff ties a number of these allegations to specific sections of Indiana's special education rules (Article 7) and Indiana's Hearing Procedure Manual. She concludes that these numerous procedural error allegations collectively show that the IHO is "unfamiliar with both the law and the procedures surrounding administrative due process under the IDEA and Article 7" and "does not currently meet the qualifications required by the IDEA" or Indiana's special education rules. *Id.*

The problem with all of this is that Plaintiff's allegations in Count III are attacks on the IHO's legal reasoning and processes. The allegations are not an attack on his *qualifications*. If plaintiff is correct that the IHO made a misstep on the mootness issue, for example, then that would be a ground to *reverse* his decision, not to *remove* him as the IHO. Plaintiff's analysis conflates the two.

This is the essential point to be gleaned from *A.C. v. W. Windsor–Plainsboro Reg'l Bd. of Educ.*, No. 21-13016, 2022 WL 1468199 (D.N.J. May 10, 2022). In *A.C.*, the plaintiff appealed a decision by an ALJ (equivalent to the IHO in this case) on numerous bases. Notably, plaintiff claimed that the New Jersey Department of Education violated her right to an impartial due process hearing because the ALJ "was incompetent, lacking the knowledge required to preside over the petition." *Id.* at *4. As here, New Jersey moved to dismiss arguing that plaintiff failed to allege that the ALJ was unqualified because "mere disagreement with a hearing officer's decision does not render State Defendants liable for violations of the [IDEA]." *Id.* The court agreed with New Jersey and held that plaintiff's complaint "alleges only that the ALJ committed purported

8

legal errors, and does not challenge the ALJ's qualifications . . . [so] Plaintiff has failed to state a claim for violation of her right to an impartial due process hearing under the [IDEA]." *Id.*

The court said it could find no cases "that found a cognizable claim for violation of a plaintiff's right to an impartial due process hearing based on an independent hearing officers' inadequate understanding of the legal issue or standards concerning a particular case." *Id.* at *6. But the court rejected the notion that no such claim could exist. Rather, the plaintiff failed to plead such a claim because she did not allege "any factual allegations challenging the ALJ's educational background, qualifications, familiarity, or experience with due process hearings under the IDEA." *Id.* Instead, plaintiff had alleged "numerous garden-variety evidentiary, procedural, and legal determinations made by the ALJ." *Id.*

The court concluded that these assertions of procedural and legal errors "cannot sustain a violation of a plaintiff's right to an impartial due process hearing. Indeed, if this were the case, then every successful appeal of a final decision pursuant to the Act would also result in a due process violation. This cannot be the intent of the statute." *Id.* To assert a claim based on an ALJ's qualifications, the court reasoned that a plaintiff "must allege, at minimum, that the hearing officer was unqualified, did not receive appropriate training, or displayed a pattern of incompetency so egregious that it violated the plaintiff's right to an impartial hearing." *Id.*

By contrast, *J.A. v. Monroe Twp. Bd. of Educ.*, No. 20-09498, 2022 WL 970194 (D.N.J. Mar. 31, 2022) provides an example of a claim that survived a motion to

9

dismiss. But in *J.A.*, another case from New Jersey, the complaint specifically alleged that there was a "systemic violation of the hearing officer qualifications [under IDEA] by the State Defendants." *Id*. at *3. The court denied New Jersey's motion to dismiss this count and held that the failure to provide adequate training or instruction on IDEA, its regulations, or New Jersey regulations was enough to state a claim. *Id*. at *8. The Court concluded that "Plaintiffs have outlined the training deficiencies of the ALJs" with sufficient factual detail to survive a motion to dismiss. *Id*.

    This district has also seen a similar claim before in *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847 (N.D. Ind. 2009) but at the summary judgment stage. In *M.O.*, the court considered an argument that the former Indiana Board of Special Education Appeals' findings that the IHO made numerous substantive and procedural errors demonstrated that the hearing officer did not meet the requirements of 20 U.S.C. § 1415(f)(3)(A). *Id*. at 854. The court concluded that the plaintiffs had not presented enough evidence to raise a genuine issue of material fact and did not satisfy the standard for a procedural violation of the IDEA, which is whether the violation "result[ed] in the loss of education opportunity." *Id*. at 855–58 (internal citation omitted). The *M.O.* court concluded that "erroneous factual and legal determinations cannot be considered procedural violations of the IDEA", but unlike the *A.C.* court examined the plaintiff's allegations of "regular" legal or factual errors differently than the allegations of procedural error, the latter of which the court examined under the "loss of education opportunity" standard. *Id*. at 858.

    There is an obvious distinction between pleading deficiencies with a hearing

officer's training, knowledge, or qualifications versus pleading "garden-variety" procedural and legal errors. In my way of thinking, to sustain a claim that an IHO is not qualified as a matter of law Plaintiff must plead allegations specific to the requirements of 20 U.S.C. § 1415(f)(3)(A) and 511 IAC 7-45-8 concerning the training, qualifications, or knowledge of the IHO rather than merely the substance of the IHO's opinion or the procedures of the due process hearing. As a conceptual matter, as noted above, alleging that an IHO committed a legal error is not the same as alleging that the IHO does not satisfy the federal and Indiana requirements for hearing officers. If this distinction did not exist, then "every successful appeal of a final decision pursuant to the [IDEA] would also result in a due process violation." *A.C.*, 2022 WL 1468199, at *6. Such a framework would mean that any error by an IHO (a reversal on appeal) equates to a finding that the IHO is not qualified to serve as an IHO. This would create a standard of perfection. But that is entirely unworkable and not the purpose of § 1415 of the IDEA. Congress enacted § 1415 to enshrine procedural safeguards that guide challenges to the provision of FAPE under the IDEA and not to require perfection from hearing officers. *See* 20 U.S.C. § 1415(a).

The thrust of Count III is Plaintiff's contention that the IHO fails to satisfy the hearing officer requirements of 20 U.S.C. § 1415(f)(3)(A)(ii) and 511 IAC 7-45-8(a), which I described above. For example, Plaintiff first alleges that the IHO's determination that Plaintiff's claim for compensatory education is moot due to her move is "clearly erroneous and contrary to the existing law." [DE 19 at 11.] Plaintiff then concludes that this alleged error demonstrates that the IHO was not sufficiently

11

familiar with IDEA and legal interpretations of IDEA by federal and state courts. *Id*.

The problem is that there are no facts supporting this claim. This allegation has nothing to do with the IHO's qualifications, background, or education. It doesn't plausibly claim that the IHO fails to possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice. Nor does it show that he does not possess the knowledge or ability to write legal opinions in accordance with normal legal practice. It simply means he may have made a mistake. Whether the IHO's legal judgment is correct or not will be reserved for the substantive discussion of Counts I and II when the time is right. But it is not grounds to remove the IHO as requested in Count III.

Plaintiff's allegation concerning the IHO's mootness ruling is precisely the sort of "garden-variety" challenge to a hearing officer's legal determination that the court rejected in the *A.C.* case. *A.C.*, 2022 WL 1468199 at *6. That is to say, this allegation is purely one of legal error. But this same logic applies for Plaintiff's procedural error allegations too. On its face, Plaintiff's legal and procedural error allegations do not make any assertions specific to the IHO's qualifications and training. For this reason, I find that the allegations as pled do not state a claim for a violation of Plaintiff's right to an impartial hearing presided over by a statutorily qualified hearing officer.

In sum, aside from the allegation that the IHO is "fairly new" (though by Plaintiff's own allegations he has been on the job for more than a year), Plaintiff fails to allege *with particularity* that the IHO was not qualified, such as alleging issues with his educational or professional background, or that he did not receive adequate training.

12

All of which brings me back to where I started: "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). There are simply no facts alleged in the amended complaint that plausibly allege that the IHO was unqualified. In other words, making legal or procedural errors does not make one unqualified and subject to dismissal as decisionmaker. If it did, I'd be out of a job.

## Conclusion

For the aforementioned reasons, the Motion to Dismiss [DE 21] is **GRANTED**. Count III is **DISMISSED WITHOUT PREJUDICE** against Defendants the Indiana Department of Education, Division of Special Education, and Katie Jenner, Indiana Secretary of Education. Consistent with the existing May 20, 2024, Scheduling Order [DE 36], Plaintiff may seek leave to amend her pleadings by August 16, 2024.

**SO ORDERED.**

ENTERED: June 26, 2024

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT